May please the court. Kenneth Carpenter appearing on behalf of Mr. Horace Worley. Mr. Carpenter, at page six of your opening brief, you seem to say that Deloach creates a legal right for an appellant not to be subjected to a remand. Where does Deloach say that? Well, Your Honor, I believe what I was attempting to say was, is that Deloach implicates the legal right not to be subjected to a remand. Not that it excludes remand as a possibility. The, the, obviously the judgment. But where does Deloach say that? And it creates that right? Well, I believe it says it at page 1377 that I cited to it. We believe that Mr. Worley had a right as a matter of law to a reversal and not to a remand that a remand has the express purpose of developing the record to the ultimate determination of entitlement. In this case, in this case, though, sort of said two things. Well, the, the veterans court, it said the board provided inadequate reasons or bases for its exclusive reliance on Miss Donnelly's assessment. And it said, go back and provide more explanation. And then it also seemed to open the door to further development of evidence. These are two completely different concepts in my mind. One of which is fully supported by Adams and other cases. And that's namely that the can say, I can't review this because you didn't explain to me why Miss Donnelly's testimony ought to carry the day. I mean, she's only a nurse practitioner. She's not even a doctor. Why is her testimony standing alone? So persuasive. It's somewhat superficial in nature. And what what really is going on here? That to me seems like a legitimate exercise for a court. Anytime they're receiving an opinion, the depths of which they don't understand and can't ascertain because it's too cursorily written. Isn't it okay for them to say, I need more explanation because I don't understand this in the normal course of an appeal as to a question of fact, I believe that that is correct. Your Honor, however, in the context of a statutory presumption in which that presumption has attached based upon the plain language, as this court interpreted the statute. That the presumption attaches when there is no notation at the entrance to service. As a result, Mr. Worley had the benefit of that presumption until that presumption was rebutted. We were in the rebuttal stage, if you will, of whether or not that presumption would continue. And in this context, when... I'm sorry, I thought this was a question about whether or not the migraine disorder was aggravated during service. That's correct, Your Honor, but that's the second... So that's not the same issue as a presumption based on soundness when you come in. So I thought this was more of an aggravation case. No, I'm sorry, Your Honor. I believe that the distinction that this court made in Wagner was that the presumption issue is the second prong of the presumption of soundness. So this is a presumption of soundness question. It goes to the second prong of the presumption of soundness. Let me see if I can understand. You're saying there are really two pieces here. Yes. So he didn't note that he had headaches in his entrance thing. So the VA has to look at two things. One, whether he really did have pre-existing headaches. And I don't think you're challenging that anymore, although that was the subject of a lot of ink spilled below in a lot of time because your client was claiming he didn't. Yes. But you're not challenging the conclusion that the VA has established that he had headaches beforehand, right? I wouldn't go quite there. Are you still challenging that? No, I believe we're still challenging that. That's just not part... I thought you acknowledged that in one of the proceedings. You're challenging that there's enough evidence to support the conclusion. There's not enough evidence to support the conclusion that the CAVC reached. I... The word was correct. I'm saying I'm conceding that for the purpose of this argument. Oh, okay. Well, that's... No, that's just what I wanted to be clear. So you're just talking about aggravation. Yes. So your position is, just this goes to Judge Moore's question, that even though he should have put it on his entrance exam and he didn't, and we've established that he had headaches early on, the VA still has to establish that those headaches that he had starting at age seven were not aggravated during his years of service. That's correct, Your Honor. However, let me clarify... And you're saying that they didn't do that. Well, and that's my question. I'm sorry, but she hit the nail on the head and articulated it obviously better than I apparently had. But Ms. Donley said, quote, they clearly unmistakably existed prior to service and were not aggravated beyond their natural progression due to service. So that is this nurse practitioner, and that to me is, I thought, what I understood you mainly to be appealing. Am I wrong? I mean, it's... I'm afraid that you are not correctly interpreting our position. Our position is that the second prong of the presumption of soundness, the question of whether or not the government met by clear and unmistakable evidence, is showing that the condition was not. They have to prove a negative. Yeah, but she testified to it. She affirmatively said that clear and unmistakable, blah, blah, blah, blah, blah. And so the board relied on that, and the Veterans Court said, that's conclusory. Granted, it's a nurse practitioner. It's not even a doctor. I need more explanation. I need you to go back. It may well be that the state of the evidence of record doesn't support what they did. I guess where I was hoping you and I were going to go in this discussion, I'll just lay it all out for you, is that I don't see any problem with the remand. And I think anytime a reviewing court feels like it can't understand the decision, in part, because the decision isn't adequately explained. So you don't have reasons and bases in order to review, that there isn't a problem with a remand for that purpose. Here, I'll tell you, I think the board went too far. I think they also opened the door to the introduction of new evidence, and I don't think the VA gets a do-over on its proof. If the VA below wants to say Nurse Donnelly's testimony alone was enough because here's why, that's fine. But what they don't get to do is supplement the record. So I actually think there's a mistake here that has occurred, and maybe a modification to the remand order is necessary, but I don't see how you can convince me that a remand itself in its entirety isn't appropriate. Respectfully... I'll just lay it out for you. I appreciate that, Your Honor. I'm in a place that you should at least be modestly happy about. A half a loaf is better than no loaf, Your Honor. I certainly agree with your analysis and your conclusion about the overreach that was taken by the Veterans Court by suggesting that further... If it's based on the record as it now stands, that's a direct quote from Adams. Yes. So the Adams Court, which previously allowed a remand for more explanation of reasons and bases, it seems to me carved out the propriety of such a remand as being limited to reasons and bases and not introduction of new evidence. So I guess I'm a little concerned the Veterans Court went too far to the extent it's opened the door for the VA to start a whole new building of a case against your client, but I don't see any problem under Adams with a remand for more explanation. And we are certainly concerned about that, Your Honor. However, our primary concern is the nature of the legal benefit that accrued to my client when he received the benefit of the presumption of soundness. That presumption at law needs to be taken away from him. And the only way that that presumption can be taken away from him is if there is clear and unmistakable evidence. And a conclusory statement, even by a VA examiner, that there was clear and unmistakable evidence does not meet that legal standard as a matter of law. That's a question of application of law to fact that I can't reach if the Veterans Court said this statement is there. Maybe it is based on record evidence. It's not for me to sort through that record evidence and try to figure it out. That's something the board, the Veterans Court, shouldn't even be doing that. The board is the institution that ought to be doing that in the first instance. Not in the context of the rebuttal of a presumption, Your Honor. The Veterans Court has held in the Miller case that a statement even by a medical professional that there is clear and unmistakable evidence is not enough to meet the legal standard that was imposed by Congress. The legal standard imposed by Congress is clear and unmistakable evidence. Not an opinion or a conclusion of a medical professional that there is clear and unmistakable evidence, but a demonstration based upon factual medical evidence that is in the record that supports the conclusion that the condition was not aggravated beyond its normal progression. The issue that's being presented in this appeal is a question of whether or not the VA gets to have another opportunity to rebut the presumption. The Veterans Court order cuts off the Secretary's responsibility under law to rebut the second prong of the presumption by saying, I can't understand what you said in your decision. So maybe you did. Sorry? So maybe you did. So maybe I... Maybe you did rebut. Can't understand it. So maybe you did. Except that maybe you did is not sufficient to meet the requirements to rebut. In other words, the Secretary gets one opportunity and one opportunity only to rebut. And it is binary. They either did or they didn't. And when the court reviews de novo, whether the Veterans Court reviews de novo, whether or not that legal standard of clear and unmistakable evidence was met, that showing is either met or it's not met upon a de novo review. And when the court short-circuited that de novo review process by saying, I can't determine, based upon a concession from the government that they couldn't determine, is, as a matter of law, a failure to rebut. I think I understand your argument. What I'd like you to show me or tell me is I certainly appreciate the point that Judge Moore was making. And is it your view that you preserved or made that argument on appeal? Well, I will confess I did not intentionally make it. In other words, even if a remand were otherwise warranted here under Adams or whatever, at a minimum, the board should not, the CAVC should not have allowed on remand for the potential. I don't know. I thought, Mr. Carpenter, didn't you argue that it was not appropriate for them to open up and get a second bite at the apple? Yes, I did, Your Honor. I thought you expressly said they can't have a second bite at the apple and introduce new evidence. And I did that, Your Honor. And you didn't tease it out as two separate arguments. And I did not. I didn't think I came up with that on my own. No, no. I thought I read it in the brief. But I was trying to be candid with the court that that was not my intention to suss that out. My intention, as I was just discussing with Judge Wallach, was to make clear that the burden, when shifted by statute, is a burden that must be resolved. And the failure to resolve it by a reasons or bases determination by the court and a concession by the government is a tacit admission that the burden was not met. And if the burden was not met, then the presumption is not met. That argument I understand, whether I agree with it or not is another question. I certainly understand your argument. So I don't mean to cut you off. But just going back to the issue we were discussing with Judge Moore about the ability of the board to develop the record further, we had lots of veterans' cases. And we're always sending it back for more information. They violated the duty to assist. They should have done another medical exam. I mean, constantly. So is there something about, is there a view, and I think the government kind of alludes to this, that when you go back for more information, you have to be looking for information that only helps the veterans, not for search for the truth? The government seems to allude to that. And I assume you would embrace that. So I would like you to tell me why that's so. Well, I do embrace that, Your Honor. But in the context. If it went back, I mean, let me just make this argument to you. It goes back to the board. We're trying to figure out whether your client merits this or not. And usually, as I said, in veterans' cases, we're looking for more information, and that information is under the rubric of we're assisting the veteran to make his case. But in this instance, it goes back to the board, and the board says, I've got these two opinions, and this one is pretty conclusive. This one isn't. The right thing to do is to really hire an expert in this so that they can really give us, take these two opinions and tell us whether there is or there isn't a strong basis or a presumed basis that this aggravation should count for the veteran. What's the problem with that? I mean, I guess I'm a little nervous about cutting off the ability on remands to allow the board and the VA to develop the record more because that's what we do all the time to help veterans. And this appeal does not seek that limitation. This appeal seeks the limitation solely in the context of when a statutory presumption, in this case, the presumption of soundness, has attached. And it is the development of evidence that is only negative to the veteran that would rebut that presumption. He got the presumption as soon as his medical physical failed to note that he had a preexisting condition of migraine headaches, which at best circles back to when he was age seven. But in this case, Your Honor, the record before the board and the record before the veterans court was two previous medical doctors who stated that they could not resolve the question of aggravation without resorting to speculation. Which means the veteran should win because there's a presumption in this case. That's correct. As a matter of law. So if two doctors say, I can't conclude that service did not aggravate his migraine condition. Well, first off, there's no doubt his migraine condition worsened. There is no doubt about that in the record. The question is, was even the nurse Donnelly admitted that she just said it's the normal progression of the disease may be to get worse over time. And it might just be the normal progression of the disease and not the fact that he was subject to stress in the military during his service. You know, so, so I lost my train of thought. I didn't know where I was going. Well, I had a question. I spent too long rambling. Sorry. The opinion from the nurse practitioner Donnelly was simply speculative. And as a speculative opinion as to what might be the natural progression is not, as the law requires, clear and unmistakable evidence. Well, tell me, can we go back to first square? I understand the preexisting and whether or not he had it beforehand. But if I'm in the service for two years and I have something that was wrong with me beforehand. Yes. What is the presumption? I mean, and then I'm in the service for two years and then 20 years later, I come back and I make a claim. And my condition has gotten really, really bad. So it's preserved, presumed that even though I had it before, during the two years that I was in service, it's presumed that that made it worse. And what about, do you divide it by the intervening years? Let's assume the claim is filed 20 years later. And you understand my just wondering about this? Yes, I do, Your Honor. I believe that this is all explained in this court's decision in Wagner, in which Judge Dyke went back through the history, the legislative history, of the presumption. That took different forms up until the form at 311 and now 1111. And the conclusion in Wagner was, is that the turning point or the triggering point for the establishment of the presumption is whether or not a condition is or is not noted on the entrance exam. That is on the government. If the government, even though you may have had a preexisting condition, does not note that condition because you present without any appearance of having a preexisting condition, fails to make the adequate inquiry and note that you have a preexisting condition, then that failure affords the veteran the benefit of a presumption that when he or she entered service, they were of sound condition. I assume you know a hell of a lot more about this than I do. So do you, everything's done by forms. I mean, I assume. Do you happen to know, I'm just curious, so that's not part of the record, if the form when you're enlisting or being, that medical form about preexisting, if it asks about whether you've had headaches in the past or migraines in the past. And if it does, and the veteran does not check that box or says no, does that still mean that it's the burden is on the government to establish that? I'm just wanting you to clarify. Yes, I believe it does. In terms of the form itself, obviously that form over time has changed composition, but I believe that this is a report in which the medical examiner is supposed to inquire of preexisting conditions. Mr. Carpenter, I have another question. Chief Judge Prost asked a question posing as a hypothetical, suggesting that if 20 years later, you know, somebody expresses, but in this case, just to make sure I understand the facts, he served on active duty on multiple occasions through January of 2005. And he started seeking treatment prior to 2000, during 2008 for these migraines and filed his claim in 2009. So we're talking about at most four years between the end of his service and his application for benefits, not even when he started seeking treatment, but his application for benefits in this case. And I guess part of what made me think about that was I could see and couldn't you, it being a factual question that we would have no authority over ultimately. But let me give you a, for example, a veteran served in the military in the 1940s and in the year 2000, he's developed hearing loss. Couldn't you imagine that the passage of time, a doctor could say, given the passage of time and the first symptoms, there's no evidence that this was aggravated during service. So, I guess what I'm suggesting is couldn't what Judge Prost is pointing out in a hypothetical be factored in by the doctor to a conclusion he may or may not reach about the natural progression of the human body or a disease and into, therefore, his reason, his or her reasoned analysis about whether service could have aggravated a condition or whether the condition really and truly is the natural result of normal aging or something like that. Couldn't that be something that a doctor could factor in to his opinion? It certainly is. The legal question is whether or not that factor arises to the formidable level of that is undebatable. Right. Whether it's clear and. Clear and unmistakable. Right, right, right. That is the legal criteria. It seems to me that there is a place for the analysis that Chief Judge Prost was suggesting. It's in the doctor and the medical analysis of whatever condition it is and the effect the passage of time would have and, in fact, the amount of the passage of time, too. All of that seems factual to me, and it seems like the doctor could take that into account and articulate it in the formation of their opinion. I don't think there's any question about that, Your Honor. However, it is the uniqueness of the context in which this veteran was in, in which the failure to note the migraines at entrance to service gave him the benefit of the presumption until the VA was able to take that presumption away by rebuttal of both prongs. Yes, but along the lines of what Chief Judge Prost is suggesting, I think if Nurse Donnelly wasn't a nurse but an ear, nose, and throat doctor, and this was hearing loss, and if the ear, nose, and throat doctor said, Well, this person had such and such a condition, and hearing loss is expected to deteriorate by 5% annually. Four years have passed, and it actually only deteriorated by 3%. This person beat the odds. I think the doctor could thus conclude that there is no evidence to support the idea it was aggravated by service. If anything, they seem to have ended off better off than they should have under the natural progression of the disease, and therefore I conclude that this was not aggravated by service. I feel like that's all something that can happen regardless of whether it's noted on the form if you are accepting, which you did for purposes of this appeal, that the condition preexisted service. You've accepted for purposes of this appeal that the condition preexisted service. But, Your Honor, I think your last qualification of except that it wasn't noted is simply contrary to this court's case law in Wagner. It is Wagner that dictates the interpretation of how the presumption works, and the presumption works. It is automatic. It is conferred upon the doctor. Yes, but a doctor could overcome it with clear and unmistakable evidence if he proves that the normal hearing loss per year is 5%, and you've had less than that. Therefore, there's no doubt in his mind it is clear that this is the normal progression of your disease and not something that was aggravated. And you're absolutely right, Your Honor. And in the first instance, before the VA and before the board, the secretary has the right to make that case. And he didn't, right? And he didn't. Okay. Our fault. We've gone way beyond. We'll restore your rebuttal. Good morning, Your Honors. May it please the court. I'd like to start by just discussing the record briefly because I think there were a few statements made in the colloquy with my colleague that distorted the record a little bit. The CAVC here did not. He did it, not us. Not passing blame on anybody. Well, so the court did not find that Nurse Donnelly's opinion was conclusory or inadequate to rely upon. To find that the aggravation part of 1111 had been rebutted. It simply agreed with the secretary that the board's failure to discuss Dr. Hughes' inability to offer an opinion was at least contradictory evidence that the board needed to address, acknowledge, and explain how it reached its conclusion despite the existence of that inconclusive opinion. Is there a difference between inadequate reasoning and factual clarification? No. I think they're part and parcel of the same in this instance. I don't think that's necessarily true across the board. But in this instance, the failure to explain the apparent contradiction between the two opinions results from a failure, apparently, to acknowledge and weigh Dr. Hughes' inability to opine against Nurse Donnelly's opinion. To be clear, Dr. Hughes, she said, as I understand it, she's unable to say they weren't aggravated because this record doesn't contain sufficient medical evidence for which someone can make that conclusion. Right. So when you say unable to opine, I just want to make sure that you're not being a little bit misleading with the evidence because she says she's unable to opine because this record would not allow a medical practitioner to opine. So I think the board, it seems fair then, doesn't it, for the CAVC to say, OK, well, when a doctor says on the medical evidence presented, you can't reach this conclusion. She can't reach this conclusion because she doesn't have enough evidence. And then some nurse comes along later and says, oh, well, I can reach the conclusion. I mean, it seems fair for the CAVC under those circumstances to send it back and say, you know, it'd be really nice if you reconciled that. I agree, Your Honor. But did they get to flesh it out with facts? If necessary to understand, if the board determines that it can't understand the basis for either Dr. Hughes's opinion that the medical record that she reviewed was inadequate or they can't understand Nurse Donnelly's views as to why the medical record presented to her was adequate, then I think the CAVC was suggesting that the duty to assist would require the board to seek additional evidence, seek clarification perhaps. But you're not assisting at that point because there's a presumption that he wins. If the record is in equipoise, as you just suggested, because you suggested if neither opinion conclusively carries water based on the state of the record, then he wins. So you're not assisting him by getting more evidence at that point. So I don't see how you predicated on the duty to assist. Respectfully, I disagree that the evidence is in equipoise. The board has not found the evidence to be in equipoise. And the Veterans Court did not say we're sending this back because the evidence sure looks like it's in equipoise. It simply said you haven't explained the reason why you're trusting Nurse Donnelly's opinion. I don't remember. Did the board at least purported to apply the correct standard, right? I don't think that's in the dispute. That's correct. Did the board actually conclude this is sufficient to establish clear and convincing evidence that the presumption has been rebutted? Yes, Your Honor. It concluded that the progression of Mr. Worley's migraines was due to the natural progression based on Nurse Donnelly's opinion to that effect. And they didn't. And the CABC said we can't accept that because you haven't told us why that stands alone. Right. And Appendix 7 and 8, the Veterans Court explains that it agrees simply with the Secretary's concession that the board's failure to address Dr. Hughes's opinion and reconcile the two renders the decision inadequate under 7105. I understand why they would want an analysis of the two opinions. But what I don't get is how seeking new evidence outside of those opinions assists the veteran. Well, I think we're speculating about what the board could do under the statute of regulation when it reviews the evidence. If the board failed to recognize Dr. Hughes's opinion. You're speculating. We're deciding. Well, the Veterans Court opinion, I think, recognizes that quite frequently the reason why things are remanded is because there needs to be additional evidence. But they didn't say that. Well, I think what they said is it's not tied to a statute of regulation. I think it was somewhat just reflective of the fact that remands almost always include the possibility that the evidence will prove inadequate. But here's my problem with this argument. This argument would then allow the Secretary or the government to appear in front of us in every case or to go to the CAVC on every case to say, we think the board had adequate evidence to reach its conclusions. And if you disagree, remand so we can put more in. That's what you're asking for. That is the rule that you're asking for. If you don't agree, we made our case. We had the burden of proof and we had a high presumption we had to meet to satisfy it. And if you don't think we satisfied it based on the record, remand to give us another chance to do so. Respectfully, I disagree, Your Honor. The VA is not going. Wait, how is that not the result? The VA doesn't seek evidence adverse to veterans. It seeks the evidence necessary to decide claims. And simply, the Veterans Court statement here, that additional evidence may be necessary if the record is inadequate for the board to provide an explanation for its determination. But if the record is Adams, how does that square with Adams? Doesn't Adams, as your friend suggested, exactly say the same thing? We have jurisdiction and it's because we don't have a, that they allow for new evidence. Wasn't that Adams? Well, Adams. No, Your Honor, I don't think so. I think Adams has certainly been interpreted post-Adams as providing this court jurisdiction to review the remand order because the Veterans Court had said it didn't have authority to remand in that circumstance. And that's also how the court in Ebel distinguished Stevens and the Loach. But isn't the statement that Mr. Carpenter or Judge Moore, somebody made this statement about Adams, which held, deprives Mr. Adams of his claimed right to a decision in his favor on the record as it now stands. I think the problem is with that articulation of the Williams test in these circumstances is that as the court was worried in Ebel, that sort of articulation would swallow the narrow rule, the narrow exception to finality. So Mr. Worley contends that there was a legal determination here that the VA gets to another shot to rebut the presumption. But the Veterans Court never says that. It never interprets 1111. It simply applies 7104D and said there was inadequate reasons and bases. And so I think the problem is if a veteran can show up with a remand order and articulate some way in which his rights have been affected because he has a right to judgment on the record as it exists, then he would always get this court's review. The problem here is that Mr. Worley is not entitled to judgment on the record as it exists now. The board found that the aggravation prong had been rebutted. The Veterans Court did not disagree with that. It simply said we as a reviewing court cannot review your determination. We need you to explain it to us better so that we can review it. And so he would be asking and the Veterans Court. So they're asking for an explanation. That's fine. Yes. Does that mean that the explanation is, well, we went out and got new experts and here's what we decided? Well, I think the explanation would need to start with, okay, we're going to explain our view of Dr. Hughes' opinion because that's the opinion that they overlooked. If for some reason that they couldn't understand Dr. Hughes' opinion or something in Dr. Hughes' opinion made them unable to understand Nurse Donnelly's opinion, it is possible that to get to the right answer, they would need to go back to one of the two of them. Or ask another medical examiner a specific question to develop the evidence necessary to reach the correct result. So they look at the record as it stands and they say, gee, Dr. Hughes' opinion rebuts Nurse Donnelly's opinion. And as a consequence, we just can't decide.  If, in fact, Dr. Hughes' opinion rebuts Nurse Donnelly's, then the presumption applies and Mr. Worley will get his service connection. It wouldn't be... So what are the circumstances in which they'd have to embellish the record? If they can't understand something that Nurse Donnelly or Dr. Hughes says in their opinion or if something in the contradiction between the two requires a medical explanation. I mean, again, I'm speculating here. They said may result in a determination that a new medical opinion is warranted. I think we might have to get an interpreter here to review the record here as kind of an expert to help us interpret this. Well, I would suggest that if the board on remand said, well, the secretary hasn't rebutted on this record. So we're going to go get another opinion that maybe would rebut it. Then Mr. Worley would have a good claim on appeal to the Veterans Court that what the board did. That's what they said. The court concludes that the board should make a determination in the first instance and notes that such deliberation may result in a determination that a new medical opinion is warranted. But it doesn't explain for what that new medical opinion would be. If there is something that they simply cannot reconcile between the two medically. They can't understand something about the progression or they find that neither of the two doctors... Well, they obviously can't reconcile them. They say different things. It is possible. I mean, so Nurse Donnelly's opinion was based on a different record than Dr. Hughes' opinion. And again, we're speculating as to how the board could reconcile the two. The fact is it did not do so and that's the reason for the remand. I mean, I think the problem... The government sought a joint remand here. We agreed to the remand. Why? So where you have a presumption, the way that the secretary explained it in the secretary's brief below, and I would just point the court to Appendix 128 because I think the secretary explained it better than I would if I didn't quote him, was an opinion that the medical record is insufficient to opine on aggravation is effectively an opinion that a gap in the evidence exists. And that's exactly the kind of gap that a presumption fills. And so Dr. Hughes' opinion would appear to be evidence that supports Mr. Worley's claim. Okay. But the board didn't address it. The board didn't explain why it disagreed with that premise and it needs to do so. And it may be that it can't. And if it can't, then Mr. Worley will get his benefits. But the board in the first instance has defined facts with respect to Dr. Hughes' opinion and reconciled that with Nurse Donnelly.  Yes, Your Honor. If the two opinions… Did anything in the secretary's submission suggest that you should go out and get a new medical opinion on remand? Or the possibility that that would be? I'm not sure. I'm not sure if the secretary suggested that they would do so. I think they certainly… I think the secretary disagreed with the notion that… And certainly we did in our brief that the secretary would go out with a sort of biased view towards developing whatever evidence necessary to rebut this presumption. The secretary doesn't develop evidence in order to deny claims. But I don't think that there… I would have to go back and look at the secretary's brief again to know if there's a suggestion that based on the duty to assist or some other regulation, the development of necessary evidence would be a possibility. Now at some point, somebody suggested statutes or regulations that say this. Maybe you started off by alluding to that. Is there some regulatory or statutory basis for the board, for the CAVC to have said if we're going to remand it to the board, we can't rely on the… We have to give them the leeway explicitly to get more evidence? No. I mean, they don't cite… The Veterans Court doesn't cite one. Especially where there's a 7104D problem. There's something unexplained. Yeah, but this case is a little different than that. That's true. I mean, I think the rebutting the presumption is slightly different than other remands. But I think that it's difficult to cut off the VA's ability to develop evidence that's necessary simply because we're dealing with a rebuttal of a presumption. If the board can't understand something and this court says, well, you cannot ask for additional evidence, then the board is left with the inability to answer questions it may need to answer to get to the… Well, the board didn't say it couldn't. The board said that Ms. Dunley's testimony conclusively, clearly, and whatever established this. So the board did have an opinion that the standard had been met here. It's just the CAVC said, you never addressed Dr. Hughes' testimony, and the secretary agreed, and it's directly contradictory to Ms. Dunley, and you have to take that head-on as part of your analysis. So I guess that seems to me a very different case than if the board had said we can't make a decision based on the evidence of record. Here the board said it could. I see no error in the CAVC saying, well, then explain it. And then the board has to explain it. What I do see I have a problem with, though, is the board saying, ah, yes, we see the problem. You're right. We shouldn't have made that conclusion based on the record as it stood at that time. So now let me get new evidence. I agree. I agree that that would be a good claim that Mr. Oley could bring if the board were to do that. I mean, as we're standing here… Hasn't the CAVC invited? I don't think so. I think the CAVC was not specific enough in its statement. How could it be more specific? If you're asking, you're telling to the BVA. You're saying it wasn't specific enough as if they were saying to the BVA, if you want to, you can go out and get another medical opinion. That's exactly what they said. If it said you could permit the secretary to develop additional evidence to rebut the presumption, that would be improper. But the necessity for an additional medical examination may arise. Why don't we just quote you? Can I ask you, if the government has… I don't think the government has made this argument, but maybe in fairness to you, it's because this issue wasn't teased out. But is the government… Is it your view that this still doesn't give us jurisdiction on finality? Because even if that's our view, nothing's happened yet so that he would be able… I mean, the final factor in Williams is whether or not this is going to moot out. And it may moot out if he wins, but I don't think he'd complain about that. So if he loses and the board… It's all speculative. If the board goes for another opinion and if he loses based on that opinion and he comes up here, well, is there any doubt that he will have preserved his ability to challenge the use of that? No doubt at all, Your Honor. The court in Joyce said even where the Veterans Court makes an error of law that will govern the remand, that can be challenged in the appeal of the subsequent decision. So if the court were to believe that the Veterans Court statement here was a misinterpretation of some statute of regulation… But why shouldn't we decide? I mean, but why shouldn't we make life easier? Why should we put everybody through the additional time it would take to do that if we have a firm view that a medical opinion, a new medical opinion would not be used? Well, again, I think it would be for the same prudential reasons that the court doesn't usually review remand decisions. I mean, it encourages judicial economy to let the process play out and have everything finally decided. Also, as our conversation today shows, there is some speculation in what the board could do. We're sort of assuming the board could take this statement and run with it in an improper manner. Do you have Williams with you? I do, Your Honor. Good. Pull it out for me. I have it. The place, it's under Keynote 4 where the test is laid out, 1A, 1B, C. You don't see where I'm talking about? It's near the end of the opinion. Yeah, I have it, Your Honor. I don't have the keynotes. And do you see how number three is there must be a substantial risk the decision would not survive remand, where the remand proceeding might moot the issue? You see that? Yes. And you see there's a footnote there. Now, let's go to the footnote. The footnote cites Adams as one of the examples of what would be problematic, and it says the remand order in this case is appealable only because the remand deprives Mr. Adams of his claim right to a decision in his favor on the record as it now stands. So doesn't it seem like Williams and the third factor in Williams on it could still be appealed later, that Williams itself expressly anticipated that if somebody couldn't have a decision on the record as it stands now, that would undermine the third prong quite substantially? Well, no. So Mr. Morley would need to be able to contend that he is entitled to judgment on the record as it now stands right now. But the Veterans Court disagreed with that, and for good reason. 7261 says the Veterans Court can't find facts in the first instance. And so to reconcile the two opinions on aggravation, the Veterans Court would have had to weigh the evidence to come to a determination that the aggravation prong of 1111 had not been rebutted. And that sort of fact-finding was not at issue in Adams. And so there is no viable claim to benefits on the record as it exists now. The Veterans Court said we can't do our clear error analysis because you haven't done the necessary fact-finding. And so the Veterans Court couldn't find those facts in the first instance, and this court also cannot find those facts in the first instance. So simply articulating, claiming, I'm entitled to benefits. I'm sorry. I certainly wasn't meaning to suggest by this that we would be deciding those facts in the same entrance, or the Veterans Court could. I was going to your jurisdictional argument and trying to explain to you that Williams itself, in the very footnote attached to the third prong about, well, only if there's a substantial risk the issue won't be appealed, carves out Adams and this whole record question as expressly one of the things that would warrant going ahead and exercising jurisdiction. And so I kind of, I was meaning only to address your question about whether this should be sent back via Williams and we should wait until a later appeal to address the new evidence issue. I understand, Your Honor. I think as a prudential matter, the way in which Mr. Worley has articulated his right to have his remand reviewed takes Adams too far. Because the court, simply saying I have a right to judgment on the record as it exists now, if that's sufficient to get through the finality exception, simply saying it, then I think the exception will swallow the rule, which is what this court was worried about, the footnote one in Adams, the footnote one in DeLoach. It said, you know, it needs to be an unusual circumstance where the court will review a remand. Because simply saying I'm entitled to judgment on the record as it stands now, even though the Veterans Court couldn't review that same record, provides far too open a gateway for this court to review. I'm not suggesting there's a problem with remand. I'm suggesting that the order, that perhaps we should exercise jurisdiction to modify the order. However, if it is clear to this panel that introducing a new expert to meet the standard of clear and unmistakable or whatever the standard is, would be necessary for the board to reach that conclusion. And if the Veterans Court has expressly invited them to do so, it seems prudential considerations, which you just mentioned, would dictate that we say it's not okay to do so, so that Mr. Worley doesn't have to then have that subsequent appeal. I mean, this is a veteran seeking a limited amount of benefits. For us to not exercise jurisdiction, therefore sending it back with something if we believe it's actually clearly wrong and suggesting that the board do something that we think would be legally inaccurate later on, it seems like we should exercise jurisdiction to correct that remand order. Well, Your Honor, I think the key in this parenthetical about Adam's case is that he's not saying he has a right to a decision on the record. He's saying he has a right to a decision in his favor on the record, and I think that's a key distinction. It's important because simply saying I have a right to a record, a decision on the record as it exists, without additional evidence is, I think, what Your Honor is suggesting Adam stands for. But in Adams, he was saying I have a right for this court to reverse because I should win, and that is reviewable in a remand order. And I think to fit into that Adams exception, the court has to go too far with respect to finding facts. It's not simply claiming that he – Adams wasn't saying if you claim a right to a decision on the record without augmentation, that's reviewable. So I think that's the distinction I would draw between Adams and the situation here. Thank you, Your Honor. Mr. Worley appealed to the Veterans Court to answer one question and one question only. Did the board correctly apply the presumption of soundness? And the answer is no, they did not because the presumption of soundness required that the evidence be clear and unmistakable to rebut the sentence. When the court evaded that issue and not unreasonably concluded, based upon the VA's concession, that the board had not provided an adequate statement of reasons or basis, acknowledged that there was not clear and unmistakable evidence in this record sufficient to rebut the presumption. Therefore, Mr. – Who acknowledged that? Who said there's not clear and unmistakable evidence in this record? They said there might be. We don't know. Which they, Your Honors. The board did not say that. The board definitively said there was. The Veterans Court said, hey, on the one hand, you have this nurse practitioner and that might be clear and unmistakable evidence. But you didn't talk about this doctor. No, Your Honor. I don't think that's correct. I don't think they said that might be clear and unmistakable evidence. No, that's implied. They said that it was not adequately explained how that could possibly be clear and unmistakable evidence in light of the existing record from Dr. Hughes that said just the opposite. Wait, who's the they we're talking about now? Are you saying that the CAVC? The Veterans Court, yes. Okay. Yes. And the Veterans Court made the assumption that it was not necessary to reach the ultimate question as to whether or not the board did or did not correctly apply based upon a concession of error that the board had inadequately explained. I mean, the case law, if somebody cited in their brief, you can still find that there's no presumption even if there's some contradiction as long as you explain it or inconsistency as long as you explain it. There's no absolute foreclosure because there were two different opinions. That would be correct, Your Honor. Just requiring that they explain the inconsistency or the tension between the two. What does that automatically mean? Because Judge Hughes's opinion, sorry, Dr. Hughes's opinion said that it was not possible based upon the evidence in this record. He offered that opinion. Now we have a nurse practitioner making a contradictory opinion. That is not clear and unmistakable evidence in the record to rebut the presumption. You have essentially two conflicting opinions amongst the VA's own experts. If the VA's experts disagree, then you clearly cannot, as the secretary, find as a matter of law that the evidence of record was clear and unmistakable that the condition was not aggravated during service. That was their legal burden. That was their evidentiary burden. How do you know, though? Maybe Donnelly had a different record in front of her. Maybe she had a medical file that contained more information than Dr. Hughes. I don't know any of that. That's why they say that when they send it back, they say this contradiction has to be addressed. The board does not have the opportunity to properly assess the relative probative value of each opinion with respect to the aggravation problem. Probative value, go back and figure it out. Look at them thoroughly. Figure out what they both had in front of them. I don't know. But respectfully, Honor, if that was on a question that was of a finding of fact, not a question of law, whether or not there is clear and unmistakable evidence to rebut the presumption is a question of law. You either meet that evidentiary burden or you do not. If you do not meet it because there is conflicting evidence in the record. The board didn't say you don't meet it because there's conflicting evidence. They said go back and weigh the probative value. Suppose that the backgrounds of the parties have been split. Suppose that the evidence in favor of the veteran was not even a nurse practitioner but like a medical assistant or something. And then suppose it was a doctor on the other side. You've got to weigh the probative value of all of these things. They might be contradictory, but maybe one you can legitimately make a fact finding one way or the other. I don't think it's for this court to figure any of that out. Respectfully, Honor, I disagree because this is raised in the context of when Congress consciously, knowingly shifted the evidentiary burden from the veteran to the secretary. And when the secretary had its burden and didn't make its burden, the veteran was entitled to have the presumption stand. Thank you. Thank you very much, Your Honor. Have we aggravated your headache, Mr. Carpenter? It hasn't arisen quite to the level of my grade. Thank you. That concludes our proceeding.